## Davis, et al v. Davis, et al.

(Decided February 20, 1914.)

### Appeal from Breathitt Circuit Court.

1.  Patents—Issued to Person After Death—Effect of.—As, by virtue of Section 2063, Ky. Stats., where a patent is issued to a person who is at the time dead, his heirs take the title to the land so patented as if the patent had been issued to them by name, it is not material that the entry and survey of the land were made after the death of the person in whose name the patent was issued.

2.  Judgment—Res Judicata—When A Defense.—To constitute a judgment a bar or estoppel there must be an identity of parties, as well as the subject matter; it being necessary that the parties as between whom the judgment is relied on as an estoppel, must have been parties to the action in which it was rendered, in the same capacities and in the same antagonistic relation, or else they must be in privity with the parties in such former action.

3.  Judgment—Want of Privity Between Personal Representative and Heirs at Law of Decedent.—There is no privity of estate between the executor or administrator of a decedent and his heirs at law or devisees; and a judgment at law against the former, while it

may bind the latter as far as it concerns the personal estate, and be prima facie evidence against them as to the realty, it is not a conclusive estoppel upon them in respect to lands devised or descended to them, either on the administrator's application for leave to sell real estate to pay the decedent's debts, or on a bill by a judgment creditor against the heirs or devisees to subject the land to his judgment; and under ordinary circumstances the heirs or devisees may set up any meritorious defense against the judgment when it is sought to be enforced against their interests.

4. Ejectment—Plaintiff May be Defeated by Outstanding Superior Title.—In ejectment the plaintiff's claim to title may be defeated by proof of a superior outstanding title, though such title be not held by the defendant.

BYRD, NICKELL & HOWARD, for Ellen Davis, &c., and McGUIRE & McGUIRE for appellants J. M. E. Davis and Polly Davis.

R. A. HURST, J. J. C. BACH and GRANNIS BACH for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

On March 14, 1907, O. A. Sears brought an action in the name of the Commonwealth of Kentucky for his use against the appellants, J. M. E. Davis and others, heirs at law of R. P. Davis, deceased, in which it was alleged that after procuring a warrant from the Breathitt County Court for one hundred acres of land and placing it in the hands of the county surveyor for a survey of the land preparatory to procuring a patent therefor, the county surveyor, instigated thereto by the appellants, J. M. E. Davis and others, refused to certify that the land upon which it was attempted to lay the warrant was vacant or to make a return of his survey; and because of the alleged failure of the county surveyor to perform his duties in the particulars indicated, and of the alleged acts of appellants in preventing him from doing so, a mandamus was asked to compel the former to certify and report the survey; and an injunction against the latter to restrain them from interfering with the county surveyor in so doing. The answer of the county surveyor denied that the land which Sears sought to have surveyed and patented was vacant land and alleged that it was owned by the appellants, J. M. E. Davis and others, heirs at law of R. P. Davis, and the latter by joint answer asserted their title to same under a 150 acre patent issued to R. P. Davis January 8, 1876, and a judgment of

the Breathitt Circuit Court rendered in 1883 in an action brought by Stephen Carpenter, administrator of the estate of Pleasant Davis, deceased, against the heirs at law of the latter, including the appellants, for a settlement of the decedent's estate and a sale of the lands left by him to pay his debts; also that the same land was covered by a patent issued to one James Reynolds in 1786, and further that they, appellants, and their ancestor, R. P. Davis, had held the actual adverse possession of the land in controversy for more than fifteen years continuously before the institution of the action of O. A. Sears.

In the meantime R. A. Hurst, claiming to have acquired an interest in the tract of land in controversy by purchase from some of the heirs at law of Pleasant Davis, deceased, together with certain other heirs of Pleasant Davis whose alleged respective interests he had not purchased, by petition were made parties to this action brought by Sears, alleging their ownership of the land under title by descent from Pleasant Davis. Appellants filed an answer to this intervening petition of appellees, which like that to the petition of Sears, denied the allegations thereof and alleged their ownership of the land, first, by virtue of the patent issued to their ancestor, R. P. Davis, January 8, 1876; second, under the judgment rendered in 1883 in the suit of Stephen Carpenter, administrator of Pleasant Davis, against the heirs at law of the latter, which was pleaded in bar of appellees' claim of title; third, by adverse possession. It was also alleged in the answer that the land in controversy was covered by the James Reynolds patent of 1786, which was superior to any claim of title that might or could be asserted by appellees under Pleasant Davis, deceased. The affirmative matter of the answer was controverted by reply.

After the filing by appellees of their intervening petition, Sears, the original plaintiff, abandoned the prosecution of his branch of the action, and the subsequent litigation was confined to the controversy between appellants and appellees as to the ownership of the land. The circuit court by its judgment declared appellees the owners of the land and from that judgment this appeal is prosecuted.

It is admitted that Pleasant Davis was killed January 22, 1865, and that the order of the Breathitt County

court authorizing the entry and survey of the 100-acre tract of land in controversy in his name, as well as the survey thereof, were entered and made after his death, also that the patent covering this land, in which the decedent was named as patentee, was issued after his death.

It does not appear from the record when Stephen Carpenter was appointed or qualified as the administrator of Pleasant Davis' estate. At any rate in 1876 and after R. P. Davis, the brother of Pleasant Davis and the father of the appellants in this action, had obtained a patent from the Commonwealth for a 150-acre tract of land which it is claimed by appellant embraces the 100-acre tract in controversy, Stephen Carpenter brought the action in the Breathitt Circuit Court to settle the estate of Pleasant Davis, who had died intestate, unmarried and without issue. All of Davis' heirs were made parties to that action, among them being the appellants in this case. The petition in the suit brought by the administrator alleged that the intestate, Pleasant Davis, died owing some debts and that the personal estate left by him was not in amount sufficient to pay them; that it was necessary to sell his lands for that purpose and that he owned at the time of his death four tracts of land, which were separately described in the petition. One of these tracts described as the fourth tract is the one now in controversy. In that action appellants, whose father, R. P. Davis, had also died, filed an answer to the petition of the administrator, setting up title to this fourth tract of land as heirs at law of their father, R. P. Davis, under the patent which had been issued to him before the institution of the administrator's action. When this answer was filed the court referred the case to the master commissioner under the following order: "This cause having been submitted on motion to refer the same to the master commissioner and said order of reference having been made to said commissioner, and the defendants, Polly Davis, etc., (appellants in this action) having filed their answer herein setting up claim to the land embraced in the patent last named in plaintiff's petition, which patent issued in the name of Pleasant Davis for 100 acres of land, and defendants having filed a patent from the Commonwealth of Kentucky to R. P. Davis bearing date January 8, 1876, as an exhibit, which patent the defendants charge covers the same land embraced in the said 100-acre patent to Pleasant Davis.

It is, therefore, adjudged by the court that this cause be referred to the master commissioner and that he hear and take proof in regard to the said conflicting patents and the title herein before referred to, and that he report his acts, etc., to the next term of this court.''

Under this order the commissioner took proof and later filed his report. Subsequently the case seems to have been referred under the same order to a different commissioner, who thereafter filed his report, and upon these reports judgment was rendered directing the sale of the three tracts of land as to which there was no dispute, but omitting from such sale the fourth tract of land claimed by the heirs of R. P. Davis. At the April term, 1883, the court rendered a further judgment which is as follows: ''This cause having been submitted and the court advised dismisses so much of the plaintiff's petition as seeks to sell the land embraced in the patent to Robert P. Davis, dated January 16, 1867. It is, therefore, adjudged that the widow and heirs of R. P. Davis, viz.: Polly Davis (widow), J. M. E. Davis, Daniel S. Davis, and Joseph S. Davis recover of the plaintiff their cost herein expended, to be levied of assets in the hands of the administrator, unadministered. It is further adjudged that a writ of possession issue in favor of William M. Coombs for the land mentioned in the judgment and the papers are filed away.''

William M. Coombs, to whom the writ of possession was awarded by the judgment, was the purchaser of the three tracts of land sold to pay the intestate's debts. The papers in the former action have been lost, but the judgments copied above appear on the record books of the court. It appears from the depositions of W. W. McGuire, one of appellants' attorneys, J. M. E. Davis and W. D. Back that after the institution of the present action in 1907 all the papers of the former action were in the clerk's office and in the custody of the then clerk, W. D. Back; that they were then read by McGuire and Davis and that the former left an order with Back to copy certain of the papers it was intended to use as exhibits in this action, but that on the next day Back, before having an opportunity to make the copies, was called to attend a trial at Lexington and when he returned the papers ordered copied, together with the entire bundle of papers in the action, were missing, and though dili-

gently searched for by Back they were never found. It also appears from the deposition of W. B. Cardwell, the present clerk and Back's successor in office, that the papers of the former action have never been in the office since he has had charge of it, which fact he ascertained from having carefully searched the office without finding them. The depositions of W. W. McGuire and J. M. E. Davis as to the contents of the lost papers, as well as the order of reference quoted above, seem to show that the title to the tract of land now in controversy was the only thing in issue in the former action.

It is insisted for appellants that the Pleasant Davis patent is void because issued after his death and based upon a warrant and survey granted and made after his death; for which reason it did not vest in the patentee or his heirs at law the title to the 100-acre tract of land in controversy. This contention is overthrown by section 2063, Kentucky Statutes, which provides: "When a patent is issued or shall issue, or a deed shall be made to a person who is dead at the issuing of the patent or the making of the deed, the heirs of such patentee or vendee shall take, hold and enjoy the title to the estate so patented or conveyed as if such patent had issued or deed had been made to such heirs by name." This statute was first enacted in 1792, and has retained a place in every volume embodying the statute laws of the State since published. So, however much we may doubt the wisdom or justness of its provisions, its antiquity, as well as the fact that no Legislature, of the many that have come and gone through the years it has been in existence, has seen fit to repeal or amend it, admonishes us not to ignore its requirements when cases arise to which they are imperatively applicable. In McCracken Heirs v. Beall & Bowman, decided December 5th, 1820, 3 A. K. Mar., 208, this court declared its meaning. The case involved the validity of a patent issued to McCracken upon an entry and survey made in his name. McCracken had died before the date of the entry, having been killed in the battle with the Indians at the Blue Licks in August, 1782. In that case it was held that, while at the common law, an entry made in the name of a dead man was void, it was not so under the act of 1792, which makes such grants inure to the benefit of the representatives of a deceased grantee; but that the act could not be made to relate back so as to defeat a title acquired

before its passage. In respect to the point last mentioned the court said:

"The letter of the act, perhaps does not, strictly speaking, apply to either an entry or survey; but when the object and intention of the Legislature is adverted to, we apprehend, there can be little doubt, but that both entries and surveys were designed to be embraced by the act. In fact, by making valid the grant, that which perfects and consummates the title, seems strongly to imply an intention to cure all defects of the same description of that which vitiated the grant, in relation to any previous step necessary to the perfecting of the title. But whilst the act is admitted to embrace entries as well as grants, it is plain that, until its enactment, it can have had no operation, and consequently until then, the entry of McCracken can have conferred no right upon his heirs; and after then, the act should not be construed so as to make the entry, by relating back to its date, overreached any title which others in the meantime, may have acquired under an adverse claim."

In Cox v. Prewitt, 88 Ky., 156, the statute in question was again before this court for construction, and it was therein held that where a patent is issued to a person who is at the time dead, his heirs take the title to the land so patented as if the patent had been issued to them by name; and further, that it does not make any difference that the survey was made after the death of the person in whose name the patent was issued. Whether Pleasant Davis, previous to his death, had in contemplation the appropriation of the tract of land upon which the patent was issued after his death, does not appear from the record; nor does it appear at whose instance it was entered and surveyed or the patent procured after his death. It is argued in the brief of counsel for appellants that the entry and survey were made and patent obtained by the procurement of Pleasant Davis' administrator, Stephen Carpenter. It would perhaps be within the bounds of reason to presume that this is true, but in the absence of any definite evidence to that effect it cannot safely be asserted as a fact. However that may be, it seems manifest from the statute and the authorities, supra, that the validity of the patent is not affected by the facts that it was issued after the

patentee's death or by virtue of an entry and survey made after his death.

Appellants' defense of res judicata will next be considered. Although the papers of the action brought by the administrator to settle the estate of Pleasant Davis were seen by the appellant, J. M. E. Davis and Mr. McGuire, his attorney before their loss, neither of them testified as to whether the master commissioner's report contained any finding on the question of title referred to him, or whether the proof taken by him, if there was any, threw any light on that question. It will be observed that the judgment in the former action did not, in terms, declare appellants the owners of the fourth or 100-acre tract of land described in the administrator's petition; nor did it declare void the 100-acre patent issued in the name of Pleasant Davis, or that the land embraced therein was covered by the R. P. Davis 150-acre patent under which appellants asserted claim to 'the 100-acre tract. It simply dismissed so much of the petition of the administrator "as seeks to sell the land embraced in the patent to Robert P. Davis, dated the 16th day of of January, 1876," and gave appellants judgment against the administrator for their costs. But if it should be conceded that the judgment, in effect, did decide that the Pleasant Davis 100-acre patent was void, that the land in controversy was covered by the R. P. Davis 150-acre patent and that appellants by reason thereof are the owners of the land, can the judgment be regarded as settling between appellants and the heirs at law of Pleasant Davis, the question of title to the land in controversy? We think not. The judgment merely, determined that the land in controversy could not be subjected by the administrator to the payment of the decedent's debts. The answer of appellants to the administrator's petition made an issue with him alone by resisting his right to obtain a sale of tract four, because of their alleged ownership thereof, but they did not make their answer a cross petition against their co-defendants, the heirs at law of Pleasant Davis, deceased; nor did appellants ask to have their title quieted to the land against the heirs at law of Pleasant Davis; nor was there any judgment rendered against the latter adverse to their rights as title holders. In other words, they were not, in fact, parties to the litigation in the sense that could

legally affect any interest or title that they may have had in the tract of land over which there was a controversy between appellants and the administrator.

To constitute a judgment a bar or estoppel there must be an identity of parties as well as the subject matter; it being necessary that the parties as between whom the judgment is claimed to be an estoppel, must have been parties to the action in which it was rendered, in the same capacities and in the same antagonistic relation, or else they must be in privity with the parties in such former action. Grundy v. Drye, 20 R., 1337. On this subject we find in 23 Cyc., 1237, the following excellent statement of the law: "Persons having liens upon or claims to property which is the subject matter of an action, or rights of action against one or more of the parties thereto, are not bound by the judgment if they are not made parties to the suit, although their claims were brought into issue in such action, or although their rights depend upon the same transaction or facts which were litigated and decided in that action." Again, in 23 Cyc., 1275, it is said: "There is no privity of estate between the executor or administrator of a decedent and his heirs at law or devises, and a judgment at law against the former, while it may bind the latter as far as it concerns the personal estate and be prima facie evidence against them as to the realty, it is not a conclusive estoppel upon which in respect to lands devised or descended to them, either on the administrator's application for leave to sell real estate to pay such a judgment as a debt of the estate, or on a bill by the judgment creditor against the heirs or devisees to subject the land to his judgment, except where the statutes regarding the powers and duties of personal representatives have changed the law so as to establish a contrary rule, and save also in a few well defined and exceptional cases. Under ordinary circumstances, therefore, the heirs or devisees may set up any meritorious defense against the judgment when it is sought to be enforced against their interests. And conversely a judgment rendered in an action to which the heirs only were parties is not binding on the administrator." Bigstaff v. Lumpkins, 13 R., 248. In view of the authorities, *supra,* it is our conclusion that the judgment in the former action relied on by appellants does not estop appellees from asserting title to the land in controversy in this action.

So the question of title involved in this case must be decided without regard to the judgment in the former action. This being true, we are led to conclude that the record furnishes no evidence of the alleged invalidity of the Pleasant Davis 100-acre patent, or that the land in controversy is covered by the R. P. Davis 150-acre patent, which, being of a later date, could not prevail over the Pleasant Davis patent, though it had been shown to embrace the land included by the latter. We are also of opinion that appellants have failed to show a possessory right to the land in controversy. Their possession has not been actual. The 100-acre tract is woodland and the facts that appellants have claimed it and paid taxes on it for more than fifteen years, and occasionally sold timber from it, do not constitute actual adverse possession in law.

The final question presented for decision is, does the James Reynolds patent, issued in 1786, cover the land in controversy. If it does, appellees, on this ground, should not have been held entitled to the land. The only evidence introduced on this question conduces to prove that the land in controversy is embraced within the boundary of the James Reynolds patent. This proof seems to be uncontradicted, and taking as a criterion the rule that courses and distances must give way to established objects or monuments called for, it seems reasonably certain that the Reynolds patent covers the land. While there is some question as to where the third line of the patent ends, it appears from the evidence that to extend it to the north bank of the Kentucky river and to a tree there called for and identified as the fourth corner of the patent, would close the survey and make it cover the land in controversy. It is, therefore, our conclusion that appellees' claim to the land in controversy is defeated by the outstanding superior title manifested by the James Reynolds patent. In ejectment the plaintiff's claim to title, may be defeated by proof of a superior outstanding title, though such title be not held by the defendant. It does not seem to be denied by appellees that the land in controversy is covered by the Reynolds patent, but they insist that the Reynolds patent cannot be relied on by appellants for they and appellees derive title from a common source. This is not true, however, for appellants

do not claim under, but against, the Pleasant Davis patent, and have from the beginning repudiated it and attacked it as void; for which reason, in order to defeat appellees, they are not estopped to show that the land is covered by a different patent and superior title.

For the reasons indicated the judgment is reversed and cause remanded for a judgment consistent with the opinion.