## Majestic Collieries Company v. Allen, et al.

(Decided June 8, 1917.)

### Appeal from Pike Circuit Court.

1. Judicial Sales—Jurisdiction—Land of Non-resident.—Where there is no service, no appearance, no attachment, and no lien by contract, judgment or otherwise, a court is without jurisdiction to sell the real estate of a non-resident, and the judgment of sale is void and passes no title to the purchaser or his vendee.

2. Ejectment—Defense of Superior Title—Estoppel.—Where, in an action of ejectment or to quiet title, both the plaintiff and de-

fendant claim through a common source, defendant cannot defeat a recovery by plaintiff by proof of a superior outstanding title with which defendant shows no privity or connection.

J. J. MOORE and STRATTON & STEPHENSON for appellant.

F. W. STOWERS and SAM STOWERS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming on the original appeal and reversing on the cross-appeal.

Nancy Allen and others, children of C. W. Mounts, deceased, brought this suit against Rafe Steele and the Majestic Collieries Company to recover a tract of 100 acres of land located on the Big Branch of Tug river in Pike county. In addition to alleging plaintiffs' joint ownership of the land as heirs of their father, C. W. Mounts, the petition charged that the defendant, Majestic Collieries Company, had obtained some kind of an interest therein from the defendant, Steele, and its assertion of claim thereto was casting a shadow on plaintiffs' title. In the first paragraph of its answer the Majestic Collieries Company denied certain allegations of the petition, but admitted that it was claiming the coal and other minerals in said tract, by virtue of a deed from its co-defendant, Rafe Steele. In the second paragraph of the answer the company pleaded that it was the owner of the coal and other minerals in the land, and further pleaded that "plaintiffs claim said land through the same source of title."

On the hearing it developed that a patent from the State of Kentucky for the land in question was issued to C. W. Mounts in the year 1869, and that on the seventh day of January, 1888, C. W. Mounts and wife conveyed the land to Rafe Steele, by deed from which the coal, salt water and gas were excepted. In the year 1894, U. K. Williams became the purchaser of the minerals, under and by virtue of a deed executed by the master commissioner in the equitable action of U. K. Williams v. C. W. Mounts. On September 27, 1900, Williams and wife conveyed to Steele. On December 17, 1906, Steele and wife conveyed to P. P. Flanagan and J. M. Mann, who then conveyed to the Majestic Collieries Company.

During the pendency of the suit the land was surveyed, when it developed that all of the land except 48.7

acres was covered by the Lee & Prater survey, dated November 27, 1848. Defendant also offered in evidence a patent issued by the Commonwealth of Virginia in the year 1897 to Alexander Walcott, assignee of William Merritt, covering 100,000 acres of land lying in the county of Russell on the south side of Sandy River. It further proved by A. F. Childers, an attorney-at-law, that this patent covered the land in question.

On final hearing the chancellor rendered judgment in favor of plaintiffs for that portion of the 100-acre tract of land not covered by the prior Lee & Prater survey. From this judgment the Majestic Collieries Company appeals, and plaintiffs prosecute a cross-appeal.

It appears that in the action brought by U. K. Williams against C. W. Mounts, and in which the minerals underlying the land in question were sold, Mounts was not served with process, but was proceeded against as a non-resident. It further appears that the suit was brought on two plain notes of hand, and that the plaintiff not only had no contract nor judgment lien of any kind on the property, but obtained no lien by attachment.

There being no service, no appearance, no attachment and no lien by contract, judgment or otherwise, it follows that the court was without jurisdiction to sell the property, and the judgment of sale was, therefore, void and passed no title to the purchaser, or to the Majestic Collieries company, which acquired title through the purchaser. Grigsby v. Barr, 14 Bush 330; Redwine v. Underwood, 101 Ky. 190, 40 S. W. 462. But it remains to determine whether the Majestic Collieries Company, though failing to connect itself with such superior outstanding titles, could defeat a recovery by plaintiffs by proof of outstanding titles superior to that of C. W. Mounts. It is well settled that a plaintiff, in an action of ejectment or to quiet title, must recover on the strength of his own title, and, that being true, the defendant may ordinarily defeat a recovery by proof of an outstanding title superior to that of plaintiff. But this rule does not apply where both parties claim under a common source. In such a case, the title of the common source need not be proven, and each party is estopped to deny the validity of the title under which he claims or holds, and cannot, therefore, defeat his adversary by proof of a superior outstanding title with which he shows no privity or connection. Woolfolk v.

Ashby, 2 Met. 288; McClain v. Gregg, 2 A. K. Marshall 454; Davis, et al. v. Davis, et al., 157 Ky. 530, 163 S. W. 468. Here the defendant did not connect its title with either the Walcott patent or the Lee & Prater survey. By its answer it admitted that it and plaintiffs claimed title through a common source. That being true, it could not defeat a recovery by mere proof of such prior patent or survey. Therefore, the chancellor did not err. in holding that plaintiffs' title was not invalid because of the prior Walcott patent, but did err in adjudging that plaintiffs could not recover that portion of the land covered by the prior Lee & Prater survey.

Wherefore, the judgment is affirmed on the original appeal and reversed on the cross-appeal, with directions to enter judgment in conformity with this opinion.